No. 13,516.

STOKES *v.* KIRK.
(47 P. [2d] 686)

Decided May 27, 1935.   Rehearing denied July 1, 1935.

Messrs. DAVIS & WALLBANK, Mr. CHARLES J. KELLY, for plaintiff in error.

Messrs. Bartels, Blood & Bancroft, Mr. Arthur H. Laws, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Defendant in error was plaintiff in the trial court where he replevied chattels that had been taken into the possession of plaintiff in error under a chattel mortgage, plaintiff asserting a superior right to possession under the terms of a chattel mortgage given to him. Parties will be referred to as they appeared in the trial court, as plaintiff or Kirk, and defendant or Stokes. To reverse a judgment in favor of plaintiff, the defendant assigns error.

August 1, 1930, Portis executed a chattel mortgage to Kirk on certain cattle and horses in Park county, Colorado, securing two notes of even date therewith in the sum of $15,000. The notes were for the term of one year, maturing August 1, 1931. August 18, following, the mortgage was duly recorded in Park county. Immediately upon the signing of the note and the execution of the mortgage, the note was, by Kirk, endorsed without recourse, and turned over to the Colorado National Bank. August 5, 1931, Kirk, as mortgagee, filed extension of this mortgage to February 1, 1932; February 5, 1932, he filed a further extension to May 1, 1932; May 18, he filed a third extension to November 1, 1932. He never filed a sworn statement under the provisions of chapter 76, Session Laws of 1927, the pertinent parts of which are as follows:

"* * * Provided that if such mortgage is made to secure a sum in excess of $2,500.00, there shall be filed beginning two years from the date of filing or recording of such mortgage, and within thirty days after said two-year period, and annually thereafter, on each anniver-

sary of the filing or recording of such mortgage, or within thirty days thereafter, in the office of said clerk and recorder, a sworn statement of the mortgagee or one of the mortgagees if there be more than one, or by the assignee of such mortgagee, showing:

"First. That said mortgage was given in good faith to secure the payment of the sum of money mentioned therein;

"Second. That said sum of money is still unpaid; or if a part has been paid, how much thereof remains unpaid."

August 1, 1930, in the office of Kirk, at the bank, Portis executed a note for $20,000 to defendant Stokes, and executed a chattel mortgage securing payment of same, subject to Kirk's mortgage on the same chattels. This note was to mature August 1, 1931. Within six months after the maturity date, and on January 29, 1932, Stokes filed her statement extending the mortgage to May 1, 1932; May 30, she filed a further extension of the mortgage to November 1, 1932. October 25, 1932, Portis gave a further chattel mortgage, to Stokes, on the same and additional chattels. Both of the Stokes mortgages were duly filed in Park county, Colorado.

December 22, 1932, Stokes took possession of all of the chattels, claiming a superior right to possession by virtue of the two mortgages given to her. Kirk requested of Stokes the possession of the chattels claiming a superior right thereto by virtue of his chattel mortgage. Being refused, he instituted this replevin action.

Stokes contends: First, failure to file annual affidavit was fatal to Kirk's right of replevin; second, the extension statements filed by Kirk were ineffectual in preserving the lien of the mortgage as against Stokes; third, Stokes' right to possession under her two mortgages was superior to Kirk's possession by replevin.

The note to Kirk was for more than $2,500, and less than $20,000, and matured August 1, 1931, one year from its date. After maturity, and on August 5, 1931, he filed

extension of his mortgage securing said note, to February 1, 1932. He filed second and third extensions covering the period to November 1, 1932. The mortgage was recorded August 18, 1930. The second anniversary thereafter fell on August 18, 1932. If he was required to file the so-called "anniversary" statement, the period for filing same would be that intervening between August 18, 1932, and September 17, 1932. Kirk contends that the "proviso" clause of the act of 1927 is inapplicable to his lien because the terms of this "proviso" apply only, if and when, the original term of the mortgage lien is, by the terms of the mortgage, created for more than two years and secures payment of more than $2,500.

██ ██ The purpose of the 1927 act is clearly for preservation of the validity of a bona fide, filed or recorded mortgage, where possession remains in the mortgagor. This validity is not preserved beyond the period of two years from the date of the mortgage where the indebtedness is less than $2,500, and not beyond five years if the debt is more than $2,500, and less than $20,000. The "proviso" above quoted reaches and covers the subject treated by the act, which is any chattel mortgage, acknowledged, certified and filed or recorded. The lien thus preserved exists conditionally. The condition for full preservation under the statutes begins in all cases where the indebtedness is in excess of $2,500, with the mandatory filing of the sworn statement as provided in the act. This can be filed only after two years from the date of the mortgage and before the expiration of thirty days thereafter. There is no period of grace. With Kirk's contention that this condition or "proviso" applies only when the original lien fixed by the mortgage is for more than two years, we cannot agree. The 1927 act makes no exception, but covers any chattel mortgage. This is a mandatory requirement if the mortgagee wishes to preserve the validity of the mortgage, and any confusion of this statute with other extension statutes is beside the question, because a mortgage must first be

100

bona fide and its validity preserved. Attempted extension of a mortgage which had lost its validity, would be ineffective.

■■ Concerning the extension statements, filed and relied upon by Kirk, we are forced to the conclusion that, as filed, they are short of strict compliance with the statute. Kirk testified as follows:

"Q. Now, Mr. Kirk, the bank's mortgage was taken in your name and the note shows an endorsement, 'without recourse.' Is that your signature on the back? A. Yes.

"Q. And the note was promptly turned over to the bank when it was taken? A. Oh, yes.

"Q. And it was held by the bank ever since it was taken? A. Yes.

"Q. And it was then, as I understand, taken in your name really as a matter of convenience, wasn't it? A. That is it.

"Q. And you have acted as the agent of the bank in connection with the entire mortgage? A. Yes.

"Q. And in connection with the extensions? A. Yes.

"Q. That is, you have never had any beneficial interest in the note or the mortgage? A. No.

"Q. Personally, I mean? A. No."

In face of this testimony, as mortgagee, he filed the three extensions which are Exhibits C, D and E, apparently to comply with chapter 65, Session Laws of 1925, the pertinent parts of which are as follows:

"The lien of any chattel mortgage filed or recorded as provided by this act may, at any time within six months after the maturity of the last installment of the indebtedness secured thereby or at any time within six months after the date to which the said lien shall have been extended in conformity with the provisions of this act as the same have heretofore existed, be extended for the unpaid portion of such debt by the mortgagee or his assignee filing with the clerk and recorder of the county

wherein the mortgage is filed or recorded, a sworn statement, showing:

"First: The total payments made on the debt and the amount remaining unpaid.

"Second: That the debt or the part thereof stated, is still due the mortgagee or his assignee, as the case may be, and that said mortgagee or assignee does thereby extend the lien of said chattel mortgage for some definite period of time, stating it, not exceeding two years."

In each of the purported extensions he made oath to the following statement "that the amount remaining unpaid as aforesaid is still due to Charles M. Kirk, the said mortgagee * * *." Kirk had alienated himself, as well as any interest therein that he could control from the transaction, upon his endorsement of the note to the bank. Nothing became due and payable to Kirk, and that was known to him. If he retained the capacity of agent, and could have extended the indebtedness as such agent, his agency must properly be shown by the extension affidavit to make the extension effectual. We do not intend to cast the slightest reflection upon Kirk's integrity in the matter, but unfortunately for himself, he misconceived the operation of the statutes in such cases provided, in which the procedure laid down should have been strictly followed, before he could establish rights superior in himself as against those lawfully acquired and intervening upon his failure.

The judgment therefore must be, and is, reversed.

MR. JUSTICE HILLIARD and MR. JUSTICE BOUCK dissent.